UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MARY KEIRSEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:04CV975 CDP |
| | ) | |
| DR. BRETT C. BARNES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Mary Keirsey had a total hip replacement performed by Dr. Brett C. Barnes. After that surgery her new hip dislocated, and she ultimately required a revision surgery, which Dr. Barnes also performed. She brought this medical negligence case alleging that Dr. Barnes' negligence in the first surgery caused the dislocation, which necessitated the second surgery. The jury found for plaintiff, and entered a verdict in her favor totaling $100,000.

Dr. Barnes seeks judgment as a matter of law, arguing that plaintiff failed to make a submissible case of medical negligence because her expert witnesses did not opine that Dr. Barnes failed to exercise that degree of skill and learning ordinarily exercised by members of his profession under the same or similar circumstances in treating her condition. Instead, the plaintiff's experts stated that defendant's treatment failed to meet the "standard of care." They never told the jury what that

standard was.

I conclude that the expert witnesses here said enough to get this case to a jury. When the experts' testimony is considered as a whole it is apparent that the witnesses were using the objective standard required by the law, and were not simply testifying as to what they would have done or to some other standard. To rule otherwise would be to elevate form over substance. I will therefore deny the motion for judgment as a matter of law.

## **Background**

The allegation of negligence in this case was that the acetabular angle used in the first hip replacement surgery was too steep, which caused the prosthetic hip ball to dislocate from the cup holding it. The testimony was that the angle here was 72 to 76 degrees, while 45 degrees was the optimal angle for placement of the prosthetic hip, and that the "safe zone" could vary from 30 to 60 degrees.

Plaintiff presented two eminently qualified expert witnesses, Dr. Ted Schlafly, who testified by video deposition, and Dr. Douglas McDonald, who testified live. Both were critical of the angle that Dr. Barnes used, and both testified at great length about how hip replacements are performed and the reasons that the acetabular angle should be below 70 degrees. Both testified that, in their opinions, Dr. Barnes' care failed to meet the "standard of care." Neither said that Dr. Barnes

was negligent; neither said that his care failed to meet the standard that would be used by surgeons exercising the degree of skill and learning ordinarily used under the same or similar circumstances. Defendant argues that this testimony failed to make a submissible case under Missouri law, and that the court should therefore grant judgment as a matter of law.

### Discussion

In deciding a motion for judgment as a matter of law, I must: (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. E.E.O.C. v. Kohler Co., 335 F.3d 766, 772 (8th Cir. 2003) (citing Haynes v. Bee-Line Trucking Co., 80 F.3d 1235, 1238 (8th Cir.1996)). Judgment as a matter of law will be denied unless the moving party shows that the claim cannot be maintained under the controlling law. Rule 50, Fed. R. Civ. P.

Under Missouri law, a medical negligence claim requires evidence from an expert witness that the defendant failed to meet the requisite standard of care. Wicklund v. Handoyo, 181 S.W.3d 143, 146 (Mo. Ct. App. 2005). Missouri

defines negligence as the "failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of the defendant's profession." Missouri Approved Instructions 11.06. What exactly the expert must say to meet the requirement has been the subject of frequent disputes.

The Missouri Supreme Court addressed this issue in <u>Swope v. Printz</u>, 468 S.W.2d 34 (Mo S. Ct. 1971). The court held that expert testimony that defendant's care "was not up to acceptable medical standards" was not sufficient to make a submissible case. 468 S.W.2d at 40. Because the expert witness did not state what his understanding of acceptable medical standards was based upon, the court concluded that he was making a subjective statement about his own standards. In the absence of evidence that the doctor was acquainted with or was basing his testimony on the proper standard, the defendant was entitled to judgment as a matter of law.

In <u>Ladish v. Gordon</u>, 879 S.W.2d 623 (Mo. Ct. App. 1994), the court granted judgment as a matter of law where the plaintiff's expert merely stated that the defendant's care fell below "accepted medical standards" without further defining the standard of care. The expert there testified about "the usual approach," what would have been "more appropriate," that the defendant doctor's care showed "poor judgment," and that one of the omissions fell below the "standard of care."

The court stated, "It is necessary in each case that the fact finder be informed as to whether the witness in offering opinions, is using the standard prescribed by law and not some other standard." 879 S.W.2d at 634. It is "not enough that the jury instruction informs the jury of the meaning of negligence, or that some other witness testifies as to *that witness'* understanding of negligence in that context." Id.

> If attorneys and expert witnesses are allowed to become sloppy in the use of terms such as "accepted standards" and "standards of care" without specifying at some point in the witness' testimony the meaning of those terms, experts will inevitably tend to rely upon their own views of acceptable practice rather than applying the objective legal standard.

879 S.W.2d at 634-635.

On the other hand, in Stalcup v. Orthotic & Prosthetic Lab, Inc., 989 S.W.2d 654, 657 (Mo. Ct. App. 1999), testimony that defendant's care "fell below the level of skill employed by certified prosthetists," was considered sufficient, even though the expert did not identify a particular act that caused the prosthesis not to fit.

Two very recent cases have again considered this argument. In Wicklund v. Handoyo, 181 S.W.3d 143 (Mo. Ct. App. 2005), the court found plaintiff's expert "sufficiently defined the standard of care, albeit imperfectly, when he stated: 'the strict definition of standard of care is what a reasonable and prudent physician would do in similar circumstances.'" 181 S.W.3d at 148. In Blevens v. Holcomb,

2006 WL 27114 (W. D. Mo. Jan. 5, 2006), the expert witnesses gave specific examples of what course of action they believed was necessary to meet the standard of care (e.g., taking the patient's history, admitting the patient for observation), but neither witness defined what was meant by the phrase "standard of care." Both of the experts in <u>Blevens</u> compounded the problem by testifying as to what they would have done. The <u>Blevens</u> court stated:

> Neither expert identified the content or source of "the standard of care" to which they referred, leaving the jury without confirmation they were referring to the standard required by law as opposed to a personal (or some other) standard of conduct. The necessity of distinguishing between the legal standard and the experts' personal standards is always necessary, . . .

2006 WL 27114, slip. op. at *4.

The evidence in this case is not precisely like any of the reported decisions, and I must consider the testimony as a whole, and give the plaintiff the benefit of all reasonable inferences from the evidence. Although plaintiff's counsel simply asked about the "standard of care," and neither witness identified what they meant by that phrase, when their testimony is considered as a whole it is apparent that they were discussing the objective standards applicable to the profession, and not about their own subjective standards. Both testified about medical literature and studies discussing hip replacement surgeries, as well as about the way these surgeries are

taught to surgeons, and both testified that the standard of care is the same no matter where the surgery is done.

Dr. McDonald was asked whether the treatment here "fell below the standard of care applicable to orthopedic surgeons at that time." (Tr. p. 29). He was also asked his opinion of what "an orthopedic surgeon" should do if he encounters certain conditions, and "whether or not an orthopedic surgeon has to take some action to resolve that problem." (Tr. p. 32). Additionally, he testified that there is a national standard of care, and that his opinion would not depend on whether this surgery had been performed "in Poplar Bluff or in St. Louis or New York City or anywhere else in the country." (Tr. pp. 36-37). Finally, he testified that while orthopedic surgeons aim for a 45 degree acetabular angle, anywhere between 30 to 60 degrees would be reasonable or in the safe zone. (Tr. pp. 48-49).

Dr. Schlafly also testified about a national standard, and that "the fundamental teaching and education that goes into performing total hip replacement surgery is the same throughout the country." (Depo. tr. at 12). He testified about an "acceptable safe range" and gave his opinion that Dr. Barnes "departed . . . below the minimum standard of orthopedic care. . ." (Depo. tr. 52). Although he stated that "negligent" was not a term that had been used in his testimony or by counsel, I agree that he was not required to define or use the legal term "negligence."

The language of the cases defendant relies on appears to require the expert to use magic words, but I think this is a hypertechnical reading of those cases and of Missouri law. Careful review of <u>Ladish</u> and <u>Swope</u> shows that the expert testimony in those cases was far below that needed to meet the standard of Missouri law, and that the testimony left open the clear suggestion that the experts were simply relying on their own subjective standards of what they would have done in similar circumstances. Here the experts testified that the standards did not vary from Poplar Bluff to New York, which obviously means that they were testifying about more than what they themselves would have done. Their reference to the "safe zone" also indicates that they understood that reasonable surgeons could differ on the precise angle required, and they never attempted to suggest to the jury that their own manner of doing things was the standard they were applying.

In light of cases like <u>Ladish</u> and <u>Blevens</u>, I do not understand why plaintiffs' lawyers continue to fail to ask the questions in the proper form, but I have no doubt that in this case these experts were in fact testifying based on the objective standard required by the law. Their testimony did not suggest to the jury that they were applying a subjective standard, or that they were improperly measuring defendant's performance against what they themselves would have done. Instead, when their testimony is considered as a whole, it is clear they were testifying about the degree

of skill and learning ordinarily exercised by orthopedic surgeons performing hip replacement surgery.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for judgment as a matter of law [#57] is denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of March, 2006.